CHARLES W. EARP and RUTH T. EARP, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Earp v. Commissioner
Docket No. 19685-84.
United States Tax Court
T.C. Memo 1985-353; 1985 Tax Ct. Memo LEXIS 279; 50 T.C.M. (CCH) 446; T.C.M. (RIA) 85353; July 18, 1985. Charles W. Earp, pro se. J. Mack Karesh, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioners' income tax for the calendar year 1980 in the amount of $4,230 and an addition to tax for that year under section 6653(a)(1) [1] of $211.50. All of the issues raised by the pleadings have been disposed of by agreement of the parties except petitioners' claim raised in the petition *280 that they are entitled to a deduction of $3,769.82 for expenditures made by Mr. Earp for meals in 1980 and the validity of respondent's determination of the addition to tax under section 6653(a)(1). FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, who filed a joint Federal income tax return for the calendar year 1980 with the Internal Revenue Service Center, Memphis, Tennessee, maintained their legal residence in Matthews, North Carolina, at the time of the filing of the petition in this case. Petitioners on their tax return itemized their deductions. A number of the deductions claimed by petitioners were disallowed by respondent. All of the issues with respect to those claimed deductions have now been disposed of by agreement of the parties.One of the claimed deductions by petitioners, which petitioners now agree was properly disallowed, was stated to be a contribution of $11,856.70 to the Universal Life Church. Petitioners on their tax return did not *281 claim any business expenses for meals but did make a claim for a deduction of $3,769.82 for business meals in their petition. Petitioners' claim was based on a record Mr. Earp kept during the year 1980 which showed a date, a person's name, a location, and, under "topic," such statements as condo investment, stock trade, real estate investment, real estate, incorporation, stock, home building, real estate trust investment, taxes, speculative house, beach property, business plan, millwork, trust account, taxes, computer programs and rental property. In the final column was an amount which generally was under $25, although some of the individual amounts exceeded $25, and at the trial petitioner produced statements reflecting expenditures in those instances where the amount was in excess of $25. Petitioner Charles W. Earp was employed full-time during the entire year 1980 as an engineer with International Business Machines, Inc. (IBM). Petitioner reported no income on his tax return for 1980 from any business activity other than his employment with IBM. Petitioner, in 1973, obtained a real estate broker's license. However, petitioner has never actually sold any property as a real *282 estate broker. During 1980, petitioner was considering pursuing a real estate brokerage business. However, he made no sales in that year.In 1981, petitioner started construction of a speculative house which he sold in 1982. In years subsequent to 1982, petitioner bought some rental property. In 1982, petitioner and his wife began selling a fad diet called the Cambridge Diet. In 1984, petitioner, together with other persons, began publishing a stock market newsletter. One of the persons listed by petitioner as a person he entertained at meals was Frank Black. Mr. Black was a stockbroker and also was interested in the Universal Life Church. In later years petitioner purchased some stock through Mr. Black, but did not purchase stock through Mr. Black in 1980. Another person whose name appeared often on the list petitioner maintained was Jim Brady. Mr. Brady was another engineer employed during 1980 by IBM who worked with petitioner. The amount of costs of meals which petitioner claimed to be deductible included petitioner's own meals. Where only one other person was present at the meal, generally one-half the cost would be for petitioner's meal; and if more than one other person *283 was present, the cost of petitioner's meal would be a proportionate part of the entire cost. OPINION Section 162 allows a taxpayer to deduct all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, and section 212 allows an individual to deduct all ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income. Section 262 specifically provides that except as otherwise expressly provided, no deduction shall be allowed for personal, living, or family expenses. The burden is on petitioner to establish that he is entitled to a claimed deduction. Welch v. Helvering,290 U.S. 111 (1933); Rule 142, Tax Court Rules of Practice and Procedure. In order to make such a showing, a taxpayer must show that the claimed expenses were proximately related to his trade or business or to an activity engaged in for the production of income. Hearn v. Commissioner,36 T.C. 672, 674 (1961), affd. 309 F.2d 431 (9th Cir. 1963). Here, petitioner has shown no business or income-producing activities in the year 1980 with respect to any of the items *284 he stated were discussed in his meetings with various individuals listed on the schedule he maintained. Clearly, any acticity with respect to the Cambridge Diet started much later by petitioner and his wife, the stock market newsletter started 4 years later, the house built for resale started in 1981, the rental property acquired after 1980, and the alleged computer business which apparently was never started, were not businesses which petitioner was carrying on in the year 1980 or transactions entered into for profit in that year. Petitioner did have a real estate broker's license in 1980. He testified that in his meetings with Mr. Brady he was discussing the possibility of Mr. Brady purchasing a condominium at a beach resort, and that some of his other discussions with persons listed on the list concerned their purchasing time-sharing at beach resorts. Petitioner, however, did not show that he had any listings of any condominiums or beach properties or any details of the discussions. He made no actual sales in 1980 or at any time of any real estate as a broker. In our view, the record here is far too sketchy to conclude that petitioner was in the trade or business of being a *285 real estate broker in 1980 or that he had transactions entered into for profit in connection with real estate in 1980. The record as a whole clearly indicates that petitioner listed much of the cost of entertainment of individuals who were his personal friends as claimed business expenses. The costs listed included his own personal meals. On this record we conclude that petitioner has failed to substantiate his claimed business expense deductions for meals for himself and other specified individuals. When respondent has determined an addition to tax under section 6653(a)(1), it is incumbent upon the taxpayer to show error in this determination. Enoch v. Commissioner,57 T.C. 781, 802 (1972). Petitioner here has made no showing of error in respondent's determination of an addition to tax for negligency or intentional disregard of rules and regulations under section 6653(a)(1). A person of petitioner's education who is employed as an engineer by IBM certainly should know whether a deduction for contributions claimed to have been made to the Universal Life Church was proper. Petitioner has now conceded that he is not entitled to the claimed deduction for a contribution *286 to the Universal Life Church. However, improperly claiming a large charitable contribution deduction is a clear indication of negligence or intentional disregard of rules and regulations. In any event, petitioner has totally failed to carry the burden of showing error in respondent's determination of this addition to tax. We decide the issues litigated for respondent, but because of issues disposed of by agreement of the parties, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise stated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year here in issue.↩